IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RENASANT BANK, INC., | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 19-0733-CG-MU |
| AVE, INC., *et al.*, | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

On July 21, 2020, Defendants John Asar Coil, John Kenneth Coil, and AVE, Inc. filed a Motion to Dismiss Purported First Amended Cross Claim for Lack of Personal Jurisdiction, or in the Alternative, to Transfer. (Doc. 37). This motion has been referred to the undersigned Magistrate Judge for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen. LR 72. Having reviewed and considered the relevant pleadings and briefs and the relevant law, the undersigned Magistrate Judge **RECOMMENDS** that the Cross-Claim Defendants' motion to dismiss the cross-claim filed by co-defendants John Altaire Coil and AVE, Inc. for lack of personal jurisdiction (Doc. 37) be **DENIED** for the reasons set forth below.

## SUMMARY OF PROCEEDINGS

Plaintiff Renasant Bank, Inc., filed a complaint for interpleader pursuant to 28 U.S.C. §§ 1335 and 2361 and Rule 22 of the Federal Rules of Civil Procedure against Defendants AVE, Inc., John Altaire Coil, John Asar Coil, and John Kenneth Coil on October 1, 2019. (Doc. 1). Defendants AVE, Inc., John Asar Coil, and John Kenneth Coil filed their answer on October 23, 2019, and Defendant John Altaire Coil filed his

answer on November 27, 2019. (Docs. 15, 19). A second answer was filed on behalf of AVE, Inc. on December 2, 2019. (Doc. 20).[1] On May 16, 2020, Defendants John Altaire Coil and AVE, Inc. filed a motion for leave to file a cross-claim against Defendants John Kenneth Coil and John Asar Coil. (Doc. 31). The Court granted the motion and the cross-claim was filed on June 5, 2020. (Doc. 34). The instant motion to dismiss the cross-claim for lack of personal jurisdiction was filed on July 21, 2020. (Doc. 37). Cross-claimants John Altaire Coil and AVE, Inc. filed a response in opposition to the motion to dismiss (Doc. 41), and Cross-defendants John Kenneth Coil and John Asar Coil filed a reply brief in response to Cross-claimants' opposition (Doc. 42).

## SUMMARY OF ALLEGATIONS[2]

On or about April 26, 2019, Defendant/Cross-claimant John Altaire Coil (hereinafter "JAC") came to Renasant's Mobile, Alabama branch to open an account in the name of AVE, Inc. (hereinafter "AVE"). (Doc. 1 at ¶ 11). JAC presented Renasant with the Articles of Incorporation and other documents for AVE, Inc. and represented that he was the President and sole owner of AVE. (*Id*. at ¶ 12). An opening deposit was made by check in the amount of $1,455,497.56 (the "Opening Funds") remitted by Driggs Title Agency, Inc. to AVE and 518 Garces Ave, LTD. (*Id*. at ¶ 13). The check had been endorsed by 518 Garces Ave, LTD, with signature guaranteed. (*Id*.). JAC

---

[1] The individual Defendants dispute the ownership of AVE, Inc.; therefore, counsel for both John Kenneth Coil and John Altaire Coil have filed answers and other pleadings on behalf of AVE, Inc.

[2] For consideration of this motion to dismiss, Cross-claimants' factual allegations have been accepted as true and viewed in the light most favorable to Cross-claimants. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

provided Renasant the name of the title agent involved in the real estate transaction, and Renasant called the title agency to verify the Opening Funds presented by JAC. (*Id*. at ¶ 15). On April 29, 2019, Renasant received a telephone call from Defendant/Cross-defendant John Kenneth Coil (hereinafter "JKC") wherein he alleged that the Opening Funds were stolen by JAC. (*Id*. at ¶ 16). Both JAC and JKC claim to be the sole owner of AVE. (*Id*.). JAC presented corporate minutes which purported to evidence the issuance of 100 shares of stock in AVE to "John A. Coil." (*Id*.). JKC has two sons named John A. Coil – John Altaire Coil and John Asar Coil. Due to the discrepancy in the origin of the Opening Funds, Renasant placed a hold on the Opening Funds. (*Id*. at ¶ 17). Because Renasant is unable to determine the respective interests of Defendants in the proceeds of the account opened by JAC, Renasant filed the instant interpleader action and deposited the funds at issue into the registry of the Court. (Docs. 1, 2, 5, 6).

In his Cross-claim, JAC alleges the following: In 2016, JAC entered into discussions with long-time business associate and Las Vegas, Nevada, resident, Raymond Pistol, for the purchase of real estate in Las Vegas. (Doc. 34 at ¶ 10). JAC was interested in developing apartments on property owned by Pistol and his business associates. (*Id*.). The property addresses of the three contiguous properties were 510 and 518 Garces Avenue and 631 Las Vegas Boulevard. (*Id*.). The Garces Avenue properties were owned by Pistol's company, Dynavid, LLC., and 631 Las Vegas Boulevard was owned by a company owned by Pistol and his partners named 518 Garces Avenue, Ltd. (*Id*. at ¶ 11). The parties entered into an agreement that JAC would purchase the property for $368,000, the purchase price to be financed by the

sellers. (*Id*. at ¶ 12). On May 1, 2016, JAC executed a Promissory Note in the amount of $368,000.00 to Raymond Pistol, Ruth Lee and Stephen Turner. (*Id*. at ¶ 13).

Shortly thereafter, JAC took possession of the properties. (*Id*. at ¶ 14). The building was occupied at the time of purchase, and that business continued to operate on the property during the entire time JAC owned the building. (*Id*.). By agreement, JAC made monthly payments to Dynavid from May 2016 until the time the property sold in April 2019. (*Id*. at ¶ 15). Although JAC executed the Promissory Note in May of 2016, he did not receive a deed to the properties at that time. (*Id*. at ¶ 16). Raymond Pistol executed a deed to the Garces Avenue properties on September 21, 2017, which was recorded on November 6, 2017. (*Id*.). The grantee was AVE, and the Deed provided a signature line for John A. Coil as President of AVE. (*Id*. at ¶ 17). The document was signed by JKC, who handwrote a "K' over the "A" under the signature line. (*Id*.). JAC was not aware of this at the time it occurred. (*Id*.). His purchase of the real property was never supposed to be part of AVE; rather, he signed the Promissory Note in his own name. (*Id*.). He ran the payments through his own company, Bokonon, LLC. (*Id*.). JKC went behind JAC's back and arranged for the deed to convey the property to AVE rather than to Bokonon, LLC, or any other company of JAC's choosing. (*Id*.).

AVE is a Texas corporation which was formed at JKC's direction by JAC's sister, Katherine Dagnino, on March 3, 1993. (*Id*. at ¶ 18). JKC has never owned stock in AVE. (*Id*. at ¶ 19). Originally, business partner, Charles Phelps, owned 50% of the stock, and at that time, JAC owned the balance of the stock. (*Id*.). In 2003, JKC was indicted on multiple criminal charges relating to the operation of his businesses, including AVE, and on June 10, 2004, JKC plead guilty to a number of the criminal charges. (*Id*. at ¶ 20). As

part of his plea agreement, to the extent he owned any shares of stock in AVE, he forfeited his ownership interest in the company. (*Id*.). However, because he did not own any stock in the company, no forfeiture ever took place. (*Id*.). As part of his plea agreement, he also served five years in the federal penitentiary from 2009 to 2014. (*Id*. at ¶ 21).

In 2005, Charles Phelps sold his shares to the corporation. (*Id*. at ¶ 22). Thus, JAC owns all stock in AVE, and he has acted as President of the company since 2005. (*Id*. at ¶ 23). Neither JKC or John Asar Coil (hereinafter referred to as "Deric Coil") owns any shares of stock in AVE and neither is an officer of the corporation. (*Id*. at ¶¶ 24-25). After opting not to develop apartments, in 2018, JAC decided to sell the Las Vegas property. (*Id*. at ¶ 26). He listed the property with Craig Sutton of Keller Williams Realty Las Vegas for $1,750,000.00, and shortly thereafter, in December 2018, JAC accepted a full price offer of $1,750,000.00. (*Id*. at ¶ 27). After he accepted the offer, JAC informed his father he had the property under contract. (*Id*. at ¶ 28). At some point thereafter, JAC later received a call from his realtor stating he had received a phone call from JKC, and the realtor asked if he was authorized to communicate with JKC regarding the details of the closing. (*Id*. at ¶ 30). JAC assented. (*Id*.). By this time, JKC and Deric Coil had moved to Alton, Illinois, where they currently reside. (*Id*. at ¶ 31). JAC had moved to Mobile to build affordable housing. (*Id*. at ¶ 32). JKC began handling all aspects of closing. (*Id*. at ¶ 33). In early April 2019, JKC and Deric Coil flew to Las Vegas, Nevada, to execute the closing documents, and JKC presented Deric Coil to the title agent as John A. Coil. (*Id*. at ¶ 34).

On April 8, 2019, John Asar "Deric" Coil executed the deed as John A. Coil. (*Id*.). The title company could not deliver the proceeds of the sale to JKC on the day of closing. (*Id*. at ¶ 35). JAC learned of JKC and Deric's action when he received a call from an associate who had referred the listing to the realtor and was, therefore, to receive a referral fee. (*Id*. at ¶ 36). When he discovered what had transpired, JAC contacted his realtor to find out the details. (*Id*. at ¶ 37). The title company agreed to retain the sales proceeds so that he could execute new closing documents and receive the funds. (*Id*.). On April 17, 2019, JAC executed the new set of closing documents. (*Id*.). In return, the title agent presented to JAC the net proceeds of the sale, $1,455,497.56. 38. (*Id*.). The check was made payable to AVE, Inc, and 518 Garces, LLC, and the check was endorsed by Raymond Pistol as owner of 518 Garces. (*Id*. at ¶ 38). At the time he received the check from the Las Vegas sale, JAC had a banking relationship with Renasant Bank through another business in which he was involved. (*Id*. at ¶ 40). As set forth above, on April 26, 2019, he visited a Renasant Bank branch office to open a corporate account for AVE and presented the Driggs Title Company check for deposit, explaining that the opening funds were the proceeds of a real estate transaction and that he was the President and sole owner of AVE. (*Id*. at ¶ 41). On August 26, 2019, JKC, purportedly as President of AVE, filed an action against Renasant Bank in the Circuit Court of Madison County, Illinois, entitled, "AVE, Inc. v. Renasant Bank, Inc.," Cause No. 2019L001216. (*Id*. at ¶ 47). The case was removed to the United States District Court for Southern District of Illinois, and on January 20, 2020, that Court dismissed the action. (*Id*.).

In his cross-claim, based upon the facts set forth above, JAC has alleged eleven counts against JKC and John Asar Coil: 1) a declaratory judgment finding that he owns the Renasant Bank funds and AVE; 2) unjust enrichment; 3) intentional misrepresentation; 4) fraud and deceit; 5) resulting trust; 6) constructive trust; 7) breach of fiduciary duty; 8) wantonness; 9) negligence; 10) suppression; and 11) civil conspiracy. (Doc. 34). In Counts 3, 4, 7, 8, 9, 10, and 11, JAC seeks recovery of compensatory damages, punitive damages, costs, and interest. (*Id*).

## STANDARD OF REVIEW

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "Plaintiff's burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction." *Future Tech. Today, Inc. v. OSF Healthcare Sys.,* 218 F.3d 1247, 1249 (11th Cir. 2000) (citation omitted). "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits.... [W]here the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). If the defendant puts forth facts by affidavit showing that personal jurisdiction is lacking, the plaintiff is required to produce evidence rebutting the defendant's showing to avoid dismissal. *See Polskie Linie Oceaniczne v. Seasafe*

*Transp. A/S,* 795 F.2d 968, 972 (11th Cir. 1986).[3] "[T]he plaintiff's burden is to present enough evidence, construed most favorably to [her], to withstand a motion for directed verdict." *Beasley v. Providence Hosp.*, Civ. A. 18-0004-WS-M, 2018 WL 2994380, *2 (S.D. Ala. June 13, 2018) (citing *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006)).

## **CONCLUSIONS OF LAW**

Cross-claim Defendants JKC and Deric assert that this Court lacks personal jurisdiction over them for the claims brought by JAC in his cross-claim. The limits of long-arm jurisdiction under Alabama's long-arm statute are coextensive with due process under federal law; therefore, the Court need only consider whether its exercise of personal jurisdiction over these defendants for the claims asserted by JAC comports with the Due Process Clause of the Fourteenth Amendment. *See Vascular Ventures, LLC v. American Vascular Access, LLC, C*iv. A. No. 16-00481-KD-B, 2016 WL 7471642, *7 (S.D. Ala. Dec. 7, 2016) (citing Ala. R. Civ. P. 4.2; *Frye v. Smith*, 67 So. 2d 882, 892 (Ala. 2011)). The bounds of jurisdiction over a non-resident defendant are in accord with due process if the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Since *International Shoe*, two categories

---

[3] It is within the district court's discretion to hold an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction. *See Snow v. DirecTV, Inc.,* 450 F.3d 1314, 1317 (11th Cir. 2008). In this case, an evidentiary hearing is neither necessary nor beneficial and the Court in its discretion declines to conduct one.

8

of personal jurisdiction have arisen: general jurisdiction and specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8-9 (1984).

"General personal jurisdiction arises 'when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts.'" *HomeBingo Network, Inc. v. Chayevsky,* 428 F. Supp. 2d 1232, 1241 (S.D. Ala. 2006) (quoting *Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005) (citations omitted); *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003)). "Specific jurisdiction, on the other hand, depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id*. (citation omitted). "A defendant is constitutionally amenable to a forum's specific jurisdiction if it possesses sufficient minimum contacts with the forum to satisfy due process requirements, and if the forum's exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1545 (11th Cir. 1993) (quoting *Int'l Shoe*, 326 U.S. at 316). The non-resident defendant's contacts must meet three criteria to constitute sufficient minimum contacts with the forum:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve "some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum …, thus invoking the benefits and protections of its laws." Third, the defendant's contacts with the forum must be "such

> that [the defendant] should reasonably anticipate being
> haled into court there."

*Id.* at 1456 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)) (internal citations omitted).

The plaintiff must show that the non-resident defendant "has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities" in order for the Court to exercise specific jurisdiction over the non-resident defendant. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (internal citations omitted). While the Eleventh Circuit does not use "mechanical or quantitative" tests to determine relatedness, it has held that "the causal nexus between the tortious conduct and the purposeful contact must be such that the out-of-state resident will have 'fair warning that a particular activity will subject [it] to the jurisdiction of a foreign sovereign …." *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1222-23 (11th Cir. 2009) (quoting *Burger King*, 471 U.S. at 472 (citation omitted; alteration in original). "The defendant's contacts with the forum must be related to the 'operative facts of the controversy.'" *Smarter Every Day, LLC v. Nunez*, Case No. 2:15-cv-01358-RDP, 2017 WL 1247500, *3 (N.D. Ala. Apr. 5, 2017) (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 n.3 (11th Cir. 2008)).

It is clear in this case that this Court cannot exercise general personal jurisdiction over either JKC or Deric Coil because it is undisputed that neither of them lives, works, or has other regular contacts with the state. It also does not seem that this Court would properly have specific jurisdiction over the claims set forth in the cross-claim as the actions giving rise to those claims appear to have occurred primarily in Las Vegas,

Texas, and/or Illinois. JAC, however, asserts that this Court has personal jurisdiction over JKC and Deric based on supplemental or pendant jurisdiction.

Title 28 U.S.C. § 1367(a) provides that in civil actions in which the district court has original jurisdiction, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the [original] action … that they form part of the same case or controversy under Article III of the United States Constitution." This action was originally brought by Renasant Bank as an interpleader action pursuant to 28 U.S.C. § 1335 asserting that it had funds deposited over which adverse claimants averred ownership. (Doc. 1). "Under 28 U.S.C. §2361, Congress granted the district courts authority to issue nationwide service of process in statutory interpleader actions;" therefore, "[s]ervice in a statutory interpleader action is … sufficient to establish personal jurisdiction over the named defendant[s]." *American Gen. Life Ins. Co. v. Brothen*, 829 F. Supp. 2d 1369, 1372 (N.D. Ga. 2011). "[W]here a federal statute authorizes nationwide service of process and the federal and state claims 'derive from a common nucleus of operative fact,' the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available." *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2nd Cir. 1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

Having reviewed the interpleader action, the parties' answers, and the cross-claim, the Court finds that there is substantial overlap between the claims asserted and the proof necessary in both the interpleader action and the cross-claim. In both the original claims and the cross-claim, the ownership of AVE, Inc. is at the center of the controversy. Although damages are sought in the cross-claim beyond those set forth in

the interpleader action, the Court finds that judicial economy and the avoidance of conflicting holdings will best be served by having all disputes concerning the ownership of AVE, Inc., and thus, the deposited funds, resolved in one forum. Accordingly, the Court finds that it may assert personal jurisdiction over the cross-claim defendants in this action because the claims set forth in the interpleader action and in the cross-claim "derive from a common nucleus of operative fact."

## IV. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Cross-Claim Defendant's motion to dismiss the cross-claim for lack of personal jurisdiction (Doc. 37) be **DENIED.**

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify

the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **4th** day of **November, 2020**.

                               s/P. BRADLEY MURRAY
                               **UNITED STATES MAGISTRATE JUDGE**