IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RENASANT BANK, INC., | ) |
| | ) |
| Plaintiff; | ) |
| | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 19-0733-CG-MU |
| | ) |
| AVE, INC.; JOHN ALTAIRE COIL; | ) |
| JOHN ASAR COIL; and, JOHN | ) |
| KENNETH COIL, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on Cross-Claimants John Altaire Coil ("Altaire"), AVE, Inc. ("AVE"), and Bokonon, LLC's ("Bokonon") (collectively "Altaire") Motion for Summary Judgment as to Count I of their Second Amended Cross-Claim (Doc. 156).[1] Cross-Claim Defendants John Kenneth Coil ("Kenneth"), John Asar Coil ("Asar"), and AVE, Inc. ("AVE") (collectively "Kenneth") have responded with a Response and Objection to the Motion (Doc. 182). Altaire has replied to the Response (Doc. 183). For the reasons explained below, the Court finds that Altaire's motion (Doc. 156) is GRANTED.

## FACTS

This matter arises as a dispute between father and son. John Altaire Coil and John Kenneth Coil claim that he is the owner of $1,455,497.56 which Renasant

---

[1] In the original Motion, Altaire states that the Motion is for summary judgment as to Counts I and XI; however, in his reply, Altaire has abandoned the Motion as to Count XI and, thus, the Motion as to Count XI of the Second Amended Complaint will not be addressed.

1

Bank interpleaded with this court. (*See* Doc. 1, PageID. 2-4.) As part of the interpleader action, Altaire and Kenneth have filed various cross-complaints alleging wrongdoing by the other party. (*See generally* Docs. 34, 91, 145.)

Ultimately, Altaire, individually, and Kenneth, individually, claim ownership of both AVE and Bokonon to the other's exclusion, and thus, each claims ownership to the funds. (*See* Doc. 156, 182.) In his complaint and in the instant motion, Altaire claims that Bokonon is the proper owner of the funds deposited in the Renasant account. (*See* Doc. 145, PageID.1202-03.) Alternatively, Altaire claims that if AVE owns the funds, then he should be declared the proper owner of AVE. (*Id.*) Kenneth, on the other hand, claims ownership of both Bokonon and AVE and states that AVE, not Bokonon is the owner of the funds. (*See* Doc. 182, PageID.1650.)

Before the court now, is Altaire's motion for summary judgment seeking a declaratory judgment as to the ownership of AVE, Bokonon, and the Renasant funds.

## LAW

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the

2

non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof

at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).

**B. Declaratory Judgment**

The present motion reflects that Altaire's claims relevant to this motion sound exclusively in declaratory judgment and were brought under 28 U.S.C. § 2201 to determine the rights of any party seeking such a declaration. But it is well-settled that the Declaratory Judgment Act is properly "understood to confer on

federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L. Ed. 2d 214 (1995). Indeed, the Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287, 115 S.Ct. 2137 (citations omitted). As the Eleventh Circuit recently observed, the Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005).

Furthermore, it has been long recognized in the Eleventh Circuit that a district court has discretion to decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties." *Ven–Fuel, Inc. v. Department of the Treasury,* 673 F.2d 1194, 1195 (11th Cir. 1982). The Eleventh Circuit expounded on its *Ven–Fuel* holding in two published opinions that furnish district courts with considerable guidance in how to wield their discretion under the Declaratory Judgment Act where there are parallel state proceedings.

First, in *Ameritas Variable Life Ins. Co. v. Roach,* 411 F.3d 1328 (11th Cir. 2005), the court emphasized that considerations of federalism, comity, and efficiency require district courts to balance federal and state interests in determining how to exercise their discretion to hear a declaratory judgment action in the face of a parallel state action. *Id.* at 1330–31. To assist district courts in this

5

balancing endeavor, the *Ameritas* court promulgated a non-absolute, non-exhaustive set of "guideposts" to be considered, including: (i) the state's interest in deciding the matter; (ii) whether a judgment in the federal action would completely resolve the controversy; (iii) whether the declaratory judgment action would clarify the parties' legal relations; (iv) whether the federal action is a form of "procedural fencing" being utilized "to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case not otherwise removable"; (v) whether a ruling in the declaratory judgment action would increase friction between federal and state courts or otherwise encroach on state proceedings; (vi) whether a superior alternative remedy exists; (vii) whether underlying facts are important to informed resolution of the matter; (viii) whether the state court is better situated than the federal court to evaluate those facts; and (ix) the nexus (if any) between the underlying issues and state law/policy, and whether federal common or statutory law requires resolution of the declaratory action. *See id.* at 1331.

Mere months after *Ameritas,* the Eleventh Circuit provided both reinforcement and clarification of that opinion in *Manuel v. Convergys Corp.,* 430 F.3d 1132 (11th Cir. 2005). The *Manuel* court reiterated that the decision to hear a declaratory judgment action is discretionary, that there can be no rigid or mechanical application of the Declaratory Judgment Act, and that a vast spectrum of considerations is available to district courts deciding whether to hear declaratory judgment actions. *See id.* at 1135, 1137–38. Particularly illuminating are the *Manuel* opinion's comments concerning anticipatory filings. While recognizing that

6

one equitable consideration is whether a declaratory judgment action was filed in anticipation of the other proceeding, the *Manuel* court stressed that "[e]ven if a court finds that a filing is anticipatory, this consideration does not transmogrify into an obligatory rule mandating dismissal," but is simply one factor among many that may be considered. *Id.* That said, however, *Manuel* construed *Ven–Fuel* as standing for the proposition that, while a district court need not dismiss a declaratory judgment action filed in anticipation of another proceeding, it is not an abuse of discretion to rely on that fact (in tandem with other relevant considerations) to dismiss the action. *Id.* at 1137.

## C. Res Judicata

Altaire also argues that the issue of ownership has already been determined by either *res judicata* or collateral estoppel due to the litigation in the District Court of Dallas County, Texas. The doctrine of *res judicata* prevents a party from re-litigating a claim that already has been litigated to a conclusion. There are four elements that must be established by the movant for *res judicata* to apply: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." *Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 892 (11th Cir. 2013), citing *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001).

The purpose of the doctrine is to protect litigants from having to re-litigate matters that already have been adjudicated or that could have been adjudicated in

7

a previous lawsuit. *See, e.g., Lee L. Saad Construction Co. v. DPF Architects, P.C.,* 851 So.2d 507 (Ala. 2002). The rationale behind the doctrine is to "mandate that there be an end to litigation; that those who have contested an issue shall be bound by the ruling of the court; and that issues once tried shall be considered forever settled between those same parties and their privies." *Id.* at 516-17, *quoting Hughes v. Martin*, 533 So.2d 188, 190 (Ala. 1998). *Res judicata* not only bars the filing of claims that were raised in a prior proceeding, but also bars claims that the litigant had the "opportunity" to raise in the earlier proceeding. *Id.* at 517. Even though a claim may be labeled differently in a subsequent action, it is barred by *res judicata* if it arises from the same "nucleus of operative fact" as the prior claims. *Id.*

Under 28 U.S.C. § 1738, the judicial proceedings of a state court "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such state . . . ." Therefore, when issues of res judicata occur because of a prior state court judgment, this court must give a prior state court judgment the same preclusive effect it would be afforded in state court. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L. Ed. 2d 274 (1985). In this case, there is a prior judgment of a Texas district court.

Neither of the parties has cited this court to any Alabama authority which addresses whether *res judicata* is applied more restrictively under Alabama law within the context of a declaratory judgment action than otherwise. The court, however, is aware of some Alabama cases in which traditional res judicata

principles were applied even though the prior action was a declaratory judgment action. *See Robinson v. Holley,* 549 So. 2d 1 (Ala. 1989) (stating that claims in subsequent action were barred by dismissal of an action for an accounting and for declaratory judgment); *Calhoun v. Pennsylvania Nat. Mut. Cas. Ins. Co.,* 676 So. 2d 1332, 1334 (Ala. Civ. App. 1996) ("The dismissal of Penn National's declaratory judgment action with prejudice constituted a prior judgment on the merits that barred any claim that was adjudicated or that could have been adjudicated in that action..."). Taking guidance from these cases, therefore, this court finds that traditional *res judicata* principles are to be applied in this case even though the former action was, in relevant part, a declaratory judgment action.

## DISCUSSION

### A. Analysis of the *Ameritas* Guideposts

Altaire seeks declaratory judgment that Bokonon or, in the alternative, AVE is the owner of the funds at issue in this dispute and ultimately that Altaire, to the exclusion of Kenneth and Asar, is the owner of both Bokonon and AVE. Before addressing the merits of ownership, this court must first determine whether a declaratory judgment is proper.

This court is guided by the opinion of the Eleventh Circuit in *Ameritas* which gave nine "guideposts" for district courts to look to when deciding whether a declaratory judgment action was proper. *See Ameritas*, 411 F.3d at 1331. As stated above, these include (i) the state's interest in deciding the matter; (ii) whether a judgment in the federal action would completely resolve the controversy; (iii)

9

whether the declaratory judgment action would clarify the parties' legal relations; (iv) whether the federal action is a form of "procedural fencing" being utilized "to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case not otherwise removable"; (v) whether a ruling in the declaratory judgment action would increase friction between federal and state courts or otherwise encroach on state proceedings; (vi) whether a superior alternative remedy exists; (vii) whether underlying facts are important to informed resolution of the matter; (viii) whether the state court is better situated than the federal court to evaluate those facts; and (ix) the nexus (if any) between the underlying issues and state law/policy, and whether federal common or statutory law requires resolution of the declaratory action. *Id.*

In this matter, certain guideposts provide better direction to this court's obligations than others. First, in looking to the state's interest, both Texas and Alabama have an interest. AVE and Bokonon are both Texas corporations. Altaire is also a resident of Texas. Furthermore, the Texas state court has already taken up a full litigation of the issue of ownership of AVE. As such, Texas undoubtedly has an interest in the matter. On the other hand, the relevant bank account and the funds remain in Alabama. Furthermore, this court is specifically bound under 28 U.S.C. §§ 1335 AND 2361 to entertain jurisdiction of the matter. As such, factor one weighs in favor of entering judgment.

Second, *Ameritas* looks to "whether the judgment in the federal declaratory action would settle the controversy." *Ameritas*, 411 F.3d at 1331. Judgment here

would certainly not settle the controversy. This court is aware of actions in Texas, New Mexico, Illinois, and Nebraska that all remain in various states of litigation. (*See* Doc. 133.) Undoubtedly, a declaratory judgment in this matter will not settle the actions and controversies between these parties.

The third *Ameritas* guidepost is "whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue." *Ameritas*, 411 F.3d at 1331. It undoubtedly would, to a limited degree. Both Altaire and Kenneth stand to benefit from the final determination of ownership of both AVE and Bokonon. Thus, while the ultimate issues that remain pending in the other lawsuits mentioned above cannot be determined by this declaratory judgment, a declaration of the ownership of the two companies at issue in this matter will prove beneficial for the parties.

Fourth, "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing'—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable" is an issue that remains unknown. While Kenneth argues that this court can only issue a ruling that would "be merely advisory" and "beyond the *in personam* jurisdiction of this Court," he does not argue that this action remains pending as a form of posturing or fencing. (*See* Doc. 182, PageID.1655.) Furthermore, Altaire specifically argues that it seeks the declaratory judgment solely to determine ownership of the Renesant Bank funds. (*See* Doc. 156, PageID.1335.) Since no procedural fencing is argued, the factor leans in favor of issuing judgment.

The fifth *Ameritas* consideration is "whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction." 411 F.3d at 1331. Although neither party addresses this, this factor favors abstention given the potential for friction inherent in having double-tracked, near-identical litigation pending in both federal and state courts, such that the first court's ruling on a particular issue may have *res judicata* effect on the second court's ability to hear and decide the same issue, even if the second court disagrees with the first court's determinations. The risk of improper encroachment exists for the same reasons.

Sixth, *Ameritas* directs courts to examine "whether there is an alternative remedy that is better or more effective." *Id.* Here, none can be found. Ultimately, it is within the sole discretion of this court to determine the rights of the parties to the funds at issue in the overarching interpleader action. Thus, the only remedy available is a determination and judgment.

The seventh and eighth *Ameritas* guideposts are "whether the underlying factual issues are important to an informed resolution of the case" and, if so, "whether the state trial court is in a better position to evaluate those factual issues than is the federal court." *Id.* These guideposts remain fluid as it seems as if each of the simultaneous cases has small differences that support the independent trial courts' determination of the facts at issue. The Texas case concerns a derivative action of a separate corporate dispute involving Altaire and Kenneth; however, AVE and Bokonon are involved. The New Mexico action involves Charles Phelps, who

has been dismissed from this action, and AVE, while this matter squarely addresses funds deposited by Renasant Bank. Since each matter is separate, no state court is in a better position and issuing judgment in this action is favored.

Ninth and finally, *Ameritas* directs this court to consider "whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." *Id.* This factor unequivocally favors this court giving a declaratory judgment. This action was initiated through the interpleader statutes, 28 U.S.C. §§ 1335 and 2361, which, in relevant part, state that "district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more." With jurisdiction resting with this court, a declaratory judgment as to the funds is required.

Considered collectively, the *Ameritas* guideposts point towards this court issuing a declaratory judgment. Most importantly, the relevant statutes at issue vest jurisdiction for such a matter with this court. As such, this court will determine the ownership of the funds.

## B. Effect of the Texas Judgment

As discussed above, there are four elements that must be established by the movant for *res judicata* to apply: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the

merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." *Piper Aircraft*, 244 F.3d at 1296. If each of these elements is met, then this court will be precluded from issuing a differing judgment. In this matter, Altaire seeks that this court give full faith and credit to the lawsuit titled *JOHN A. COIL, Individually et al. v. EAST BAY, INC., et al.*, No. DC-19-01235 (68th Judicial District, Dallas County, May 14, 2021) (the "Texas Case"). This court must determine whether the Texas Case meets the criteria of set forth in *Piper Aircraft* which would give preclusive effect in this matter.

First, the District Court of the 68th Judicial District in Dallas County, Texas was a court of competent jurisdiction over the preceding case. Neither party objects to the jurisdiction of the Dallas court. Furthermore, AVE is a Texas corporation. As such, the Dallas County Court is a court of competent jurisdiction.

Second, the judgement did constitute a final judgment for the purposes of *res judicata. See Ex parte Chesnut*, 208 So. 3d 624, 635 (Ala. 2016). In Alabama, a pending appeal or the appealability of a final judgment does not affect the finality of the judgment. *Id.* The judgment will operate as res judicata notwithstanding an appeal when the appellate-court review is based on the record made below. Id. (citing *Cashion v. Torbert*, 881 So. 2d 408 (Ala. 2003). The same is true under Texas law. *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013) ("A case pending appeal is res judicata and entitled to full faith and credit unless and until reversed on appeal.") (quoting *Fid. Standard Life Ins. Co. v. First Nat'l*

14

*Bank & Trust Co.*, 510 F.2d 272, 273 (5th Cir. 1975)). Thus, the judgment issued in the Texas Case constitutes a final judgment for the purposes of *res judicata*.

Third, the court must determine whether "both cases . . . involve[d] the same parties or their privies." *Piper Aircraft*, 244 F.3d at 1296. The Texas Case involved a suit by Altaire, individually and on behalf of East Bay, Inc., against East Bay, Inc. and Kenneth. Thus, the parties are the same.

Finally, the cases "must involve the same causes of action." *Id.* Since both the Texas Case and the instant matter concern a declaratory action as to the ownership, namely, of AVE, the causes of action are the same.

Thus, with all factors being met, this Court finds that it is bound to give Full Faith and Credit to the Texas Case. The parties are precluded from raising the issues regarding the ownership of AVE. Thus, this court finds the same as the Texas court which is the following:

> [T]hat John Altaire Coil is the sole director of AVE, Inc., the President of AVE, Inc., the sole shareholder of AVE, Inc., and is the lawful owner of 1,000 shares of stock of AVE, Inc., being all of the issued and outstanding shares of AVE, Inc.

*See Coil v. East Bay*, No. DC-19-01235 at 3. As such, should this court determine that AVE is entitled to the funds, then Altaire, individually would be the owner of said funds.

### C. Ownership of Bokonon

Having found that Altaire, individually, is the owner, director, president, and sole shareholder of AVE, this Court must now determine the ownership of the only

15

remaining company in this litigation—Bokonon. To determine the owner of Bokonon, this court will look to the evidence provided by the parties.

Altaire points this court to different evidence which it claims shows ownership and control of Bokonon. Namely, Altaire has included the Certificate of Formation on file with the Secretary of State of Texas. (*See* Doc. 157-9, PageID.1472.) Altaire also included the Operating Agreement of Bokonon as well as a list of members which states Altaire has 100% of the interest in Bokonon. (*See id.*) Finally, Altaire has included the Regulations of Bokonon (*Id.*) These documents, all taken together, declare that Altaire is the sole owner, member, and manager of Bokonon.

On the other hand, Kenneth only points to evidence that Altaire, individually, failed to list Bokonon as one of the businesses that he owned during his deposition. (*See* Doc. 182, PageID.1654; Doc. 182-4, PageID.1782.) Furthermore, Kenneth states, under oath, that he owns Bokonon. (*See id.*; Doc. 182-1, PageID.1669.) With just these bare statements, Kenneth asserts that this meets the requirements to survive summary judgment.

Kenneth's claims have been examined previously. In the Texas Case, *supra*, the factfinder looked to the ownership of Bokonon and found that Kenneth's claims of ownership were fraudulent and forged. (*See* Doc. 157-8, PageID.1465.) Kenneth even "testified at trial that he submitted the false documents for Bokonon." *Id.* Further, the documentation included referencing Kenneth's ownership was determined to be "both fraudulent and contain[ing] the forged signature of Krause,

[the attorney who prepared the operating documents]." *Id.* As such, Kenneth's claims in this matter do not favor any sort of reliability.

This court disagrees with the arguments of Kenneth and finds that Altaire, individually, is the sole shareholder, owner, and manager of Bokonon. Kenneth's arguments do not meet the summary judgment requirements in that there is only "a mere 'scintilla' of evidence supporting the [non-moving] party's position." *Walker*, 911 F.2d at 1577. Kenneth has not made "enough of a showing that the [fact finder] could reasonably find for that party." *Id.* Thus, it is clear to this court that Altaire, individually, is entitled to a declaratory judgment that he is the owner of Bokonon.

**D. Declaratory Judgment of Ownership of the Renasant Funds**

Finally, this Court is asked to give declaratory judgment that Bokonon is the owner of the funds. (*See* Doc. 145, PageID.1202.) Alternatively, Altaire seeks for the court to enter declaratory judgment that AVE is the owner of the funds (*Id.* at PageID.1203.) In support of his motion, Altaire submits to the court a large amount of evidence showing that the property at issue was purchased by Bokonon with the intent of developing real estate in Las Vegas, Nevada. (*See* Doc. 156, PageID.1327-1330.) After choosing not to develop the apartments, Altair listed the properties for sale. (*Id.*) Upon selling the properties, Altaire alleges that his father and brother, Kenneth and Asar respectively, began to meddle in his affairs and interrupted the closing. (*Id.*) As such, the proper closing took place through a new set of closing documents and the check for the proceeds of the sale was made to AVE rather than

17

Bokonon. (*Id.* at PageID.1332.) Thereafter, Altaire alleges that he opened the account at issue and deposited the funds. (*Id.*)

In an effort to defeat summary judgment, Kenneth relies on four facts: (1) that the deed tiltled in the name of AVE creates an inference that AVE owned the property, (2) that the reason the property was titled in the name of AVE was because AVE "was a very lucrative company, had lots of money in it… and that's where we wanted it", (3) that AVE, not Bokonon paid for the Las Vegas Properties, (3) that the check for the proceeds of the sale of the Las Vegas properties was made to AVE. (Doc. 182; PageID.1653-54).

The court has considered these facts and finds them to be unsupported bare statements that when considered either individually or collectively, create nothing more than a a mere 'scintilla' of evidence which cannot defeat summary judgment. *Walker*, 911 F.2d at 1577. First, the evidence submitted to this court supports the conclusion that the Las Vagas property being titled in AVE was the doing of Kenneth. As stated above however, Kenneth is not the director, president, shareholder, or owner of AVE. As such, the existence of a check payable to, or a title in the name of, AVE does not, in this instance, support that AVE owned the property. Second, Kenneth's statement reasoning that the property was titled in AVE because "that's where we wanted it" when considered with the above conclusion that Kenneth, a non-owner of AVE, created the title, is again not a sufficient fact to refute the evidence presented by Altaire. Third, Kenneth's statement that AVE, not Bokonon, paid for the properties, is wholly unsupported.

18

This lack of support, coupled with the evidence that Kenneth's veracity has been repeatedly questioned and found lacking, again makes Kenneth's statement merely colorable and insufficient to defeat summary judgment.  Finally, the fact that the check was made to AVE is not sufficent to defeat summary judgment because the evidence submitted to this court explains the reason the check was made payable to AVE, i.e. due to the actions of Kenneth in his quest to keep Altaire from obtaining the funds from the sale.

For the reasons stated above, Kenneth has not made "enough of a showing that the [fact finder] could reasonably find for that party." *Walker*, 911 F.2d at 1577. Thus, it is clear to this court that a declaratory judgment that Bokonon is the owner of the funds is appropriate. As such, Altaire's Motion for Summary Judgment seeking a declaratory judgment that Bokonon is the owner of the funds should be granted.

## CONCLUSION

For the reasons stated above, Altaire's Motion for Summary Judgment (Doc. 156) is **GRANTED**. John Altaire Coil is the owner and operator of both Bokonon, LLC and AVE, Inc. John Kenneth Coil and John Asar Coil do not have an interest in either Bokonon, LLC or AVE, Inc. Additonally, Bokonon, LLC owns the funds. The only claims which remain pending in this action are Counts Two through Eleven of Cross-Claimants Second Amended Cross-Claim (Doc. 145).

**DONE** and **ORDERED** this 15th day of September, 2021.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE